## Gravely v. Gravely.

(Decided May 22, 1928.)

## Appeal from Rockcastle Circuit Court.

1. Divorce.—In suit by wife for divorce on ground of abandonment, in which husband filed counterclaim for divorce on ground of lewd and lascivious conduct, wife held entitled under evidence to divorce on ground of abandonment.

2. Divorce.—Where amount of alimony fixed by court granting divorce to wife was not criticized, judgment in that respect must be affirmed on appeal.

3. Bastards.—In action by wife for divorce, in which husband filed counterclaim for divorce on ground of lewd and lascivious conduct, evidence held not to show child to be illegitimate.

4. Bastards.—In order to disprove legitimacy of child born in lawful wedlock, it must be shown that father was incapable of act of procreation, or that he did not have, or could not have had, coition with mother within any reasonable period of gestation.

B. J. BETHURUM for appellant.

JNO. S. CARROLL and C. C. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Pearl Gravely sued her husband, Gervis Gravely, for alimony and maintenance of their infant child. In a counterclaim, defendant asked an absolute divorce on the ground of lewd and lascivious conduct, and denied the paternity of the child. Later appellant filed an amended petition also asking for a divorce on the ground of abandonment. Much proof was taken, and on final submission plaintiff was granted a divorce and awarded alimony in the sum of $30 per month. In the judgment the child was referred to as "their child," and she awarded its custody, thus inferentially establishing its legitimacy, though there was no specific order to that effect, and no special allowance made for its support. Defendant appeals.

The parties testified without objection, and much other evidence has been introduced. At the time of their marriage in July, 1922, both of them were quite young. They were then living in Harrodsburg, where plaintiff was teaching school, and defendant was working for a bank, though their parents resided at Brodhead. Trouble

arose, and a separation took place in December, 1922, though plaintiff testifies that her husband continued thereafter to visit and cohabit with her at various times until May, 1924, after which he abandoned her. Her evidence is corroborated by relatives and friends who testify as to facts showing opportunities for the exercise of the marital relation; such evidence in particular being directed to the months of January, March, June, and August of 1923, and March and April of 1924. The child was born on the 10th of June, 1924. Defendant's evidence contradicts that of plaintiff on all the points stated subsequent to their separation. He claims that after their marriage his suspicions were aroused as to previous intimacy between his wife and two young men named in the evidence, and that she admitted to him that she had been unduly intimate with both of these prior to her marriage. This was on the 24th of December, 1922. He thereupon left her, and never cohabited with her thereafter, and denies all statements to the contrary. He went to Detroit a few weeks after their separation, and remained there several weeks. He later returned and saw plaintiff during the year 1923 in Danville, in June, and saw her at Brodhead during the month of August, but this was at her request, and only for a few minutes' conversation. The fair was closed at Brodhead on the 18th of August, and he left Kentucky a few days afterward, returning to Brodhead in October, where he was taken down with a severe attack of pneumonia, and nursed in his father's home. Plaintiff visited him twice during his illness, and remained for a few minutes, but he was quite ill at the time. In these matters he is corroborated by members of his father's family and other witnesses. He also introduced evidence of lasciviousness on her part.

Richard Sowers testifies that in April, 1924, at plaintiff's request he took her, her aunt, and cousin riding in an automobile; that on this ride he took undue liberties with her person without objection, this being done in the presence of the other two. All of the ladies deny this, and Sowers' character is shown to be bad. Then other persons testify that they witnessed plaintiff and an unknown man in flagrante delicto in the tie yard at Gum Sulphur. The parties drove up in a car after dark, and plaintiff carried a rug or cushion. After they had been in the yard a short time the man said,

"Pearl, take up thy bed and walk." The reputation of these witnesses is also assailed, and this transaction is vehemently denied by plaintiff. An effort is also made to cast suspicion on the relations between plaintiff and the manager of the waterworks at Danville. This is denied by that gentleman, and both he and his wife testify as to all matters relied upon by defendant, and fully corroborate plaintiff. One of the young men mentioned by defendant as having been unduly intimate with plaintiff before her marriage testified denying all such intimacy. The other one so implicated has moved to another state. There was also introduced in evidence a letter from plaintiff to his wife, which reads:

"Brodhead, Ky., May 1, 1923.

"Dearest Wife: Arrived home all O. K., but was a little tired. I got up this morning and cooked breakfast as papa and mama went to Louisville and such had some mess of it and just this minute got dinner in the kettle. Ethelene is sick, rest gone to school, so I don't know what it will be when it gets done, but I got the fire under it just the same.

"Sweetheart, I am going to get a job as quick as I possible can, and then we will get started out all over new again and we will be happy. We won't just think we will but will be sure 'nuff happy.

"I will close for this time hoping to hear from you by return mail. Yours,          GERVIS."

It is inconceivable that the author of this letter had separated from his wife five months previously on account of her admissions of improper conduct with other men. Certainly, if such admissions were made, he was willing to condone her conduct. Also this letter is strongly persuasive that its author would exercise his marital rights where opportunity afforded. It also contradicts his entire defense, and casts a doubt upon all evidence as to lewdness and lasciviousness upon the part of his wife, if the character of the witnesses testifying had not done this already. We think the chancellor was fully justified in rejecting defendant's ground of divorce and awarding divorce to plaintiff, a matter we have considered in determining plaintiff's right to alimony, and, as the amount of the alimony fixed by the court is not criticized, the judgment in that respect must be affirmed.

Appellant (defendant) strongly insists that the evidence shows the child to be illegitimate, and introduces an interesting calculation to show that, even according to plaintiff's evidence, he could not have been its father. We do not think it necessary to go into details as to this matter. The child was born in lawful wedlock. In order to disprove its legitimacy, it must be shown that the father was incapable of the act of procreation or that he did not or could not have had coition with plaintiff within any reasonable period of gestation. According to her testimony, such relations were had in August and September, 1923. This would have been within the time. According to defendant, he left Kentucky on August 20, 1923, or 295 days before the child was born. Even this would have been within ten months, and we are not prepared to say that the child could not have been conceived at that time and born on the 10th of June, 1924. While the allowance for alimony does not specifically mention the support of the child, no doubt that was intended to be embraced in the amount awarded the mother, and, as the court reserved control in these matters, its future consideration is not precluded.

Wherefore, perceiving no error, the judgment is affirmed.

A motion for an appeal from the judgment granting a divorce was made before this court, and later abandoned, and for that reason is not considered in this opinion, except to the extent that it is now refused.